UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25 CR 443 SEP |
| | ) | |
| CHRISTOPHER GREEN, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Christopher Green, represented by defense counsel Tara Crane, and the United States of America (hereinafter "government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1, 6, and 7 of the Indictment, the government agrees to dismiss Counts 2-5, and further agrees that no further federal prosecution will be brought in this District relative to the defendant's investment fraud from March 2023 through January 2024, aggravated identity theft related to J.D. in October 2023, and PPP loan fraud related to a May 27, 2021 application, of which the government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein.

The parties are in dispute as to whether any sentence imposed in this case shall run consecutive or concurrent to any supervised release revocation sentence imposed in cause number 4:21 CR 19 SEP.

**3. ELEMENTS:**

The defendant admits to knowingly violating Title 18, United States Code, Section 1343 and 1028A, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**COUNT 1**
**(Wire Fraud)**

*One*, the defendant voluntarily and intentionally devised a scheme to obtain money by means of material false representations by soliciting payments made for investment purposes but instead converting the payments to his own use;

*Two*, the defendant did so with the intent to defraud; and

*Three*, the defendant caused to be a used, an interstate wire communication, that is a payment to his Cash App account, in furtherance of an essential step in the scheme.

**COUNT 6**
**(Aggravated Identity Theft)**

*One*, the defendant knowingly used the name, telephone number, and law firm logo of J.D.;

*Two*, the defendant knew that these means of identification belonged to another person;

*Three*, the defendant used the means of identification without lawful authority;

*Four*, the defendant knew he used the means of identification without lawful authority; and

*Five*, the defendant used the means of identification during and in relation to the crime of wire fraud as charged in Count 1.

**COUNT 7**
**(Wire Fraud)**

*One*, the defendant voluntarily and intentionally devised a scheme to obtain money by means of material false representations by securing a forgivable PPP loan on the basis of false statements on his loan application;

*Two*, the defendant did so with the intent to defraud; and

*Three*, the defendant used an interstate wire communication, that is an electronically submitted loan application, in furtherance of an essential step in the scheme.

**4. FACTS:**

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

By at least March 2023, defendant Green began representing himself as a stock day-trader and soliciting payments for "investment". Defendant told individuals that he had been trading on FOREX for several years and had yielded vast returns. Defendant promised individuals highly inflated returns on their investments, often guaranteeing a return backed by his own business.

Based on these false and fraudulent statements, several individuals sent money to defendant. Defendant insisted that these payments be sent via Cash App transfer to his account. In

this manner, at least 10 individuals sent payments from their accounts to defendant's Cash App account, with the expectation that they would be invested in the FOREX market, including a $2,000 payment from A.C. on March 20, 2023, a $1,000 payment from F.M. on May 1, 2023, and a $2,000 payment from S.F. on October 3, 2023.

Defendant falsely told these individuals that he used their money to trade on FOREX on their behalf when in actuality he spent the money for his own personal use. Defendant sent electronic communications to his "investors" which purported to be screenshots of an investment account showing increasing gain on a daily basis. However, when "investors" began requesting payment of their returns, defendant replied with various "lulling" tactics, excusing his failure to pay the investors. One particular "lulling" tactic defendant used was to claim that the investment account had been frozen by Federal authorities. In an attempt to lend legitimacy to this false statement, defendant manufactured a letter to the investors purporting to be from attorney J. D. The letter dated October 31, 2023, without lawful authority, used the law firm name and logo of J.D.'s law firm, its address, and phone number.

On May 27, 2021, defendant electronically submitted a PPP loan application to Lendistry, a third-party participating lender in the program. In the application, defendant claimed he was operating a business, by the name of Green Living, as a sole proprietor. Defendant claimed that the business began operating in February 2020 and generated $97,000 in gross income in 2020. These statements were false, as defendant well knew, as he was not operating such a business and had not generated any gross profits. However, to support these false statements, defendant manufactured a fraudulent Schedule C tax form purporting to be for tax year 2020 and filed by defendant reporting the $97,000 gross profits. In actuality, defendant failed to file any Income Tax forms for 2020. Based on his false statements and the fraudulent tax form, Lendistry approved

defendant's application and transferred $20,208 to defendant's account at Stride Bank.

Defendant used these funds entirely on personal expenses including restaurants, clothing, and other retail items.

**5. STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty, on Counts 1 and 7, is imprisonment of not more than 20 years, a fine of not more than $250,000 or both such imprisonment and fine, as to Count 6, there is a mandatory 2 year sentence that must run consecutive to the sentence imposed on Count 1, and a fine of not more than $250,000. The Court may also impose a period of supervised release of not more than 3 years of supervised release on Counts 1 and 7, and 1 year on Count 6.

**6. U.S. SENTENCING GUIDELINES: 2025 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

**a. Grouping:**

The parties agree that Counts 1 and 7 are closely related pursuant to Section 3D1.3 and are grouped together. Pursuant to Section 2B1.6, the sentence on Count 6 shall be two years imprisonment to run consecutively to Counts 1 and 7.

**b. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is 7, pursuant to Section 2B1.1(a)(1).

**(2) Specific Offense Characteristics:** The parties agree that the following specific offense characteristics apply:

4 levels are added pursuant to Section 2B1.1(b)(1)(c) as the loss exceeded $15,000, but was less than $40,000; 2 levels are added as more than 10 victims were involved, pursuant to 2B1.1(b)(2)(A); The parties disagree as to whether 2 levels are added as the offense involved sophisticated means pursuant to 2B1.1(b)(10).

c. **Chapter 3 Adjustments:**

**(1) Commission of Offense While on Release:** The parties disagree whether defendant committed the instant offense while on federal pretrial supervision in United States v. Green 4:21 CR 19 SEP, which would lead to a 3 level increase pursuant to Section 3C1.3.

**(2) Acceptance of Responsibility:** The parties agree as to whether 3 levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

d. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is as high as 15, or as low as 10.

e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the

Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues related to Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the government hereby waives all rights to appeal all sentencing issues related to

Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting

in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately. Restitution in this case is mandatory pursuant to 18 United States Code, Section 3663A and defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest

the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely

and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the government, at its option, may be released from its obligations under this agreement. The government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

4/23/26
Date

JOHN J. WARE
Assistant United States Attorney

4.23.26
Date

CHRISTOPHER GREEN
Defendant

4.23.26
Date

TARA CRANE
Attorney for Defendant